**FILED**
JAMES J. WALDRON, CLERK

**JAN. 29, 2015**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 10-48668 (DHS) |
| **RONNYE AND RINA HURTADO,** | Judge: Donald H. Steckroth, U.S.B.J. |
| Debtors. | |

**OPINION**

**APPEARANCES:**

Scura, Wigfield, Heyer & Stevens, LLP
Christopher J. Balala, Esq.
1599 Hamburg Turnpike
Wayne, New Jersey 07470
*Counsel for Debtor*

Pressler and Pressler, LLP
Lawrence J. McDermott, Jr., Esq.
7 Entin Road
Parsippany, New Jersey 07054
*Counsel for State of New Jersey, Division of Workers' Compensation*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

The State of New Jersey, Department of Labor and Workforce Development, Division of Workers' Compensation, Office of Special Compensation Funds (the "Department") moves for reconsideration of this Court's October 21, 2014 opinion ("Opinion") holding that a debt owed by Ronnye Hurtado (the "Debtor") to the Department was dischargeable.  The Department argues that the Court erred when it determined that the debt, which arose out of a penalty assessed against the Debtor's business due to its failure to pay mandatory workers' compensation premiums, was dischargeable because an essential element of the exception to discharge provided for in section 523(a)(7) of the Bankruptcy Code, that the debt be payable "for the benefit of a governmental unit," was not present.  11 U.S.C. § 523(a)(7).

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended  September 18, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (F).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In July 2008, the Department received an anonymous report alleging that the Debtor's business, Ronnye Hurtado Construction Inc. ("RHC"), did not maintain workers' compensation insurance coverage in compliance with New Jersey's Workers' Compensation Law, N.J.S.A. § 34:15-79. (Br. in Supp. of Mot. for Entry of an Order for Reconsideration of Order Dated Oct. 21, 2014 ("Dept.'s Br.") at 1, Nov. 4, 2014, ECF No. 39)  After the Debtor failed to respond to the Department's compliance enforcement letters, a penalty was assessed against RHC.  (*Id.*)

3

When the penalty went unpaid, the Department brought suit in the Superior Court of New Jersey and judgment was entered against RHC in the amount of $9,577.97. (*Id.*). On December 5, 2010, the Debtor and his spouse, Rina Hurtado ("Debtors"), filed a joint petition for bankruptcy under chapter 7 of the Bankruptcy Code, listing the Department as a creditor. The Debtors obtained a discharge on March 18, 2011.

In February 2012, the judgment against RHC was amended to add Ronnye Hurtado as principal of the corporation. The Department began attempting to collect on the judgment, taking the position that the debt arose from a nondischargeable penalty pursuant to 11 U.S.C. § 523(a)(7). On May 6, 2014, the Debtors moved to reopen the case and have the debt declared dischargeable and for an award of attorneys' fees and costs due to the Department's alleged intentional violations of the automatic stay. Thereafter, the Court issued an Opinion holding that the debt was dischargeable because an essential element required for the discharge exception under section 523(a)(7), that the penalty be "payable to and for the benefit of a governmental unit," was not met. *See In re Hurtado*, No. 10-48668, 2014 WL 5431321 (Bankr. D.N.J. Oct. 21, 2014).

The Department filed the instant motion to reconsider ("Motion") and a hearing before the Court was conducted on January 6, 2015. In its papers and at the hearing, the Department introduced new evidence showing for the first time that a portion of the penalty assessed against the Debtor was used to fund all of the administrative operations of the Office of Special Compensation Funds ("OSCF"), the Department subdivision charged with collecting, administering, and distributing benefit awards to workers' compensation claimants. The Department argues that the Court's holding was in error because the evidence demonstrating that

the penalty is used to fund the operations of the OSCF proves that the penalty is, at least in part, "payable for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7).

## DISCUSSION

### I. Motion for Reconsideration

The purpose of a motion for reconsideration is to provide the opportunity for courts to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Significantly, a motion for reconsideration "is not a vehicle to reargue the motion or to present evidence which should have been raised in connection with an earlier motion." *Tischio v. Bontex, Inc.*, 16 F. Supp.2d 511, 532 (D.N.J. 1998). Accordingly, a motion for reconsideration should be granted only where the movant demonstrates one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999).

The Department argues that reconsideration is warranted because the Court made an error of law in holding that the penalty was not paid for the benefit of a governmental unit. However, the Department has not demonstrated that reconsideration of this Court's Opinion is appropriate. The Department does not assert that there has been an intervening change in controlling law, that new evidence is now available that was not obtainable at the time of the initial motion, or that the Court made a clear error of law that must be corrected to avoid manifest injustice. Instead, the Department seeks to use the Motion to present evidence and arguments that existed at the time of the original motion but were simply neither introduced nor advanced. This is an improper use of a motion for reconsideration, which is not designed to merely give parties an additional

opportunity to prove its case before the Court. *See In re Christie*, 22 B.R. 64, 66 (Bankr. D.N.J. 1998) ("[A] a motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."))

Even though the Department's Motion fails to meet the standard for reconsideration and could be denied for that reason, the Court will nonetheless address the Motion on the merits.

## II.    Dischargeability

Section 523 (a)(7) provides:

> (a)    A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt . . .
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture <u>payable to and for the benefit of a governmental unit</u>, and is not compensation for actual pecuniary loss, other than a tax penalty . . . (emphasis supplied)

11 U.S.C. § 523(a)(7). Thus, for a debt to be nondischargeable under this provision, a creditor has the burden of proving the presence of the following elements: (1) the debtor incurred a debt; (2) the debt constitutes a fine, penalty, or forfeiture; (3) the debt is payable to a governmental unit; (4) the debt is payable for the benefit of a governmental unit; (5) the debt is not compensation for actual pecuniary loss; and (6) the debt is not a tax penalty. *In re Kish*, 238 B.R. 271, 283 (Bankr. D.N.J. 1999); *see Ins. Co. of North America, v. Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995).

The Opinion held that the debt at issue was dischargeable because the penalty assessed against RHC for its failure to carry appropriate insurance was not "payable for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7). Determining whether such penalties are paid for the benefit of a government unit requires a close reading of the provisions of the New Jersey workers' compensation statute, N.J.S.A. 34:15 *et seq.*, that describe how such penalties are collected and used. N.J.S.A. 34:15-79 provides that penalties are collected by the Division of

Workers' Compensation in accordance with N.J.S.A 34:15-120 and then placed into the "uninsured employers fund" (the "Fund"). *See* N.J.S.A. 34:15-79(d) ("All penalties collected under this section shall be paid into the 'uninsured employer's fund.'"). The purpose of the Fund is to "provide for the payment of awards against uninsured defaulting employers who fail to provide compensation to employees or their beneficiaries in accordance with the provisions of the workers' compensation law." N.J.S.A 34:15-120(a). Thus, the statute provides that assessed penalties are collected, placed into the Fund, and used to pay awards to workers who would not otherwise receive compensation for their injuries due to their employers' failure to maintain appropriate insurance coverage. *See also* N.J.S.A. 34:15-120.2.

The Department argues that the Court erred when it held that the penalties were paid to benefit workers' compensation claimants rather than the government, because, while it acknowledges penalties are undoubtedly paid *in part* to benefit claimants, they are also paid to benefit the OSCF. The OSCF is the governmental unit charged with administering the Fund and "ensur[ing] that benefit payments from the fund are paid only to individuals who meet the eligibility requirements of workers' compensation law." N.J.S.A. 34:15-120.11. The Department asserts that these penalties are for the benefit of the government because they are used to subsidize all of the administrative costs of running the OSCF.

To support this argument, the Department introduced new evidence pertaining to the use of penalties collected into the Fund, including the certification of Larry J. Crider, Administrator of the OSCF, and an expenditure report detailing the Fund's annual administrative costs and total benefit payments. Crider certified that *all* of the administrative costs of the OSCF "are borne by the revenues collected by the [Fund]." (Supplemental Certification of Larry J. Crider, Jan. 1, 2015, ECF No. 42-2) The expenditure report reveals that the administrative cost of running the

Fund in the 2014 fiscal year was $1,421,269, and, according to Crider, "all such administrative expense was paid by monies deposited into the [Fund]." (*Id.*) By way of comparison, the total amount of benefit payments paid out of the Fund to injured employees in 2014 was $2,321,923. (*Id.*)

In response to the Court's questioning concerning the statutory authority for such use of Fund monies, the Department referred the Court to N.J.S.A. 34:15-120.10, a provision of the statute not cited in any of its papers. This section provides, in its entirety:

> In any fiscal year during which benefit payments are made from the "uninsured employer's fund," the Commissioner of Labor shall apply an amount equal to $100.00 for each employee to whom such benefits have been paid from the fund toward the expenses of the Department of Labor arising from the administration of those benefit payments and the fund. However, the total amount withdrawn from the fund to cover administrative expenses shall not exceed $10,000.00 during any fiscal year.

N.J.S.A. 34:15-120.10. The Department argues that this provision authorizes using Fund monies to subsidize the administrative costs associated with running the OSCF.

The Department is correct that this statutory provision permits using an insignificant portion ($100.00) of the penalties at issue here to cover some of the administrative expenses incurred in connection with the distribution of benefit awards to each workers' compensation claimant. However, the fact that a small portion of the penalties is allocated by statute to administrative costs does not reasonably lead to the conclusion that the penalties are paid "for the benefit of a governmental unit." Rather, N.J.S.A. 34:15-120.10 provides that, for each individual workers' compensation claimant who receives a benefit payment from the Fund each year, $100 is allocated to offsetting some of the costs associated with administering said payments. So, for example, if five claimants qualified for and received benefit awards in a given year, then $500 of

the assessed penalties would be allocated to covering administrative expenses incurred by the OSCF in distributing such awards. Even though such an amount would presumably comprise only a small fraction of the total penalties collected into the Fund, the statute places a further limitation on the use of Fund monies to cover administrative expenses by providing that the "total amount withdrawn from the fund to cover administrative expenses shall not exceed $10,000 during any fiscal year." *Id*. Thus, it is clear that the legislative intent is to provide payment to claimants, not to fund the OSCF's budget.

Indeed, allocating $100 per beneficiary towards the administrative costs and capping this amount at $10,000 annually provides no support for the conclusion that the penalties are intended to inure to the benefit of a government unit. The fact that the legislature determined to devote an insignificant portion of Fund monies to administrative costs lends clear support to the opposite conclusion: the penalties are intended to be used, almost exclusively, to benefit injured employees and not the government. Pursuant to the statute, the only benefit the government receives is the benefit of offsetting a small portion of costs incurred in the performance of its duty to ensure benefit awards are directed to deserving claimants. Thus, N.J.S.A. 34:15-120.10 does not suggest that the Court made a clear error of law when it held that the penalties were not paid to benefit a governmental unit.

In response, the Department argues that, despite the strict statutory limitations on the use of Fund monies to cover administrative expenses, the fact OSCF in practice, whether legal or not, uses Fund monies to fund its entire operations means that the penalties are paid to benefit a governmental unit. Although the Department has not produced any express statutory authority for its funding practices, it cites the decision of the Supreme Court of New Jersey in *Last Chance Development Partnership v. Kean* for the position that the OSCF's practice of using Fund

monies to subsidize operations has been implicitly authorized by the state legislature. *Last Chance Dev. P'ship v. Kean*, 232 N.J. Super. 115, 129 (App. Div. 1989) *aff'd*, 119 N.J. 425 (1990) (holding that "[a]n agency's construction of a statute over a period of years without legislative interference will generally be granted great weight as evidence of its conformity with the legislative intent."). The Department essentially argues that the legislature's lack of interference with its budget practices and failure to stop the OSCF from using penalties to fund operations amounts to legislative approval.

Such argument equates to wishful thinking. If the legislature intends to fund the OSCF through penalties collected, it should clearly provide for such action. The problem with the Department's argument is that the matter at hand does not involve an agency's construction of an ambiguous statute. To the contrary, the statute is unambiguous and clearly lays out a formula for calculating the portion of funds that should be devoted to covering administrative expenses incurred in the distribution of awards to intended beneficiaries (and states that this amount may never exceed $10,000 in a given year). A legislative intent to use the Fund to subsidize the OSCF's entire operations cannot be inferred when the statute expressly provides that only a small fraction of Fund monies may be used to offset administrative costs. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). Indeed, the legislative record reinforces this conclusion, as the Committee Notes state: "The Department of Labor is allowed to charge administrative expenses against the uninsured employer's fund at a rate of $100.00 for each claim paid by the fund, with a limit of $10,000.00 during any fiscal year." N.J.S.A. 34:15-120.1, Senate Labor, Industry and Professions

Committee Statement, Assembly No. 1784--L. 1988, c.25. Thus, the OSCF's practice of subsidizing its entire operations with Fund monies is improper and in violation of the governing statute. Such practice provides no support for the conclusion that the penalty is payable for the benefit of a governmental unit as required by the exception to discharge under section 523(a)(7).

Accordingly, for the above reasons, the Court finds that the penalty assessed against the Debtor is not payable for the benefit of a governmental unit and therefore does not constitute an exception to discharge under section 523(a)(7).

## CONCLUSION

For the foregoing reasons, the Department's Motion for Reconsideration is denied. An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: January 29, 2015